**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**Case No. 19-62467-CIV-CANNON/HUNT**

MARKSMAN SECURITY
CORPORATION,

            Plaintiff,

    v.

P.G. SECURITY, INC. d/b/a PLATINUM
GROUP SECURITY, et al.,

            Defendants.

_____/

## REPORT AND RECOMMENDATIONS

This matter is before this Court on Plaintiff's Motion for Default Judgment on Certain Counts as a Sanction for Defendants' Spoliation of Evidence ("Motion for Default"), ECF No. 136, and Plaintiff's Motion for Summary Judgment ("Motion for Summary Judgment"), ECF No. 159. The Honorable Aileen M. Cannon referred this case to the undersigned for all pretrial discovery and for a report and recommendation on any dispositive matter. ECF Nos. 110, 165; *see also* 28 U.S.C. § 636; S.D. Fla. L.R., Mag. R. 1. Upon thorough and careful review of the record, the applicable law, the July 23, 2021 hearing that took place on the Motions, and being otherwise fully advised in the premises, the undersigned recommends that Plaintiff's Motion for Default, ECF No. 136, be DENIED, and Plaintiff's Motion for Summary Judgment, ECF No. 159, be GRANTED in part for the reasons set forth below.

## I.    Background

This action arises from a trademark infringement dispute where Marksman Security Corporation ("Plaintiff") accuses P.G. Security Inc. and Cameron Underwood

("Defendants") of infringing on its trademark by creating an Instagram account that bore Plaintiff's name, as well as purchasing domain names similar to Plaintiff's that when accessed sent consumers to Defendants' website instead of Plaintiff's.   ECF No. 49. Plaintiff also asserts claims for Anti-Cyber Squatting under 15 U.S.C. § 1125(d); Unfair Competition under 15 U.S.C. § 1125(a); Common Law Unfair Competition; Violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 ("FDUPTA"); and for Misleading Advertising under Fla. Stat. § 817.41.

Plaintiff moved the Court to enter default judgment against Defendants on Counts III (Common Law Unfair Competition), Count V (violation of FDUPTA), and Count VII (Misleading Advertising), as a sanction for Defendants' alleged bad faith spoliation of critical and irreplaceable electronically stored information ("ESI").   ECF No. 136.  Plaintiff also moved for summary judgment on the remaining counts.  ECF No. 159.  Defendants filed responses in opposition to both Motions and Plaintiff filed replies in support of both Motions.  ECF Nos. 166, 169, 171, 173.  The Court held a hearing on both Motions on July 23, 2021.  ECF No. 172.

## II.    Undisputed Facts

The undisputed facts are as follows:

1. Plaintiff and Defendants both provide private security and concierge services in the South Florida Market.

2. The Parties have been direct competitors in the private security and concierge services industry since 2004 and compete for both customers and employees.

3.  Plaintiff's President is Mark Radi and Kevin Van Middlesworth is the President of Defendant P.G.

4.  Mr. Radi and Mr. Van Middlesworth are cousins.

5.  On March 29, 2018 Defendants registered the following domains: marksmensecurity.com;   marksmansecurity.net;   marksmensecurity.net; marskemensecurity.org;       marksmensecurity.info;       and markmansecurity.com

6.  Defendants selected the domains because they are similar to Plaintiff's website's domain and these domains were set up so they would direct traffic to Defendants' website.

7.  Defendant PG's then senior-Vice President, Rony Joseph, created the email address markraditampa@gmail.com ("Gmail account").   The email address is based on the name of Plaintiff's founder.

8.  Mr. Joseph used the Gmail account to register an Instagram account with the username "Marksmansecurity."

9.  The header and profile of the "Marksmansecuirty" Instagram, which bore Marksman's trademarked logo, appeared on Instagram as follows:



10. The accompanying language on the Instagram account states: "We claim to be the best security company but we are not! Our employees steal from clients, we lie to our clients and we sue them if need be."

11. In or around January 2018, Mr. Underwood, under the supervision and direction of Platinum, began to pay acquaintances and other people $10 to post positive reviews online about Defendant PG's services on Google.

12. These paid reviewers posted positive, 5-star reviews about Defendant PG.

13. Defendant PG reimbursed Mr. Underwood for the amounts he paid to these reviewers.

14. From April 2018 through December 2018, Defendants' gross sales were $14,954,113.45.

15. In 2019, Defendant PG's gross sales were $21,993,216.97.

16. In 2020, Defendant PG's gross sales were $24,564,954.60.

## III.   Motion for Default Judgement

### A.   *Parties' Arguments*

Plaintiff asks this Court to sanction Defendants and enter default judgment against them on certain counts, and to provide an adverse instruction to the jury at trial regarding the deleted ESI, text messages, Instagram account, and Gmail account.  Plaintiff's Motion reiterates the numerous discovery issues to which the Court is no stranger.  Plaintiff argues that Defendants did nothing to preserve the impostor Instagram account.  Instead, Plaintiff contends that Defendants intentionally deleted the impostor Instagram account on the advice of counsel.  Likewise, Plaintiff argues that Defendants failed to preserve the impostor Gmail account until it was too late and the Gmail account was deleted.  Lastly, Plaintiff contends that Defendants' corporate representative, Mr. Joseph, continued to allow his text messages to be deleted and that he affirmatively changed the retention feature on his phone to only keep text messages for thirty days. Plaintiff contends that the

ESI lost through the deletion of the accounts and text messages cannot be restored or replaced.  Plaintiff argues that Defendants deleted the accounts and messages with the intent to deprive Plaintiff of the information and Defendants' actions are direct evidence of their bad faith intent to withhold and destroy evidence.  Plaintiff argues that even before the instant action was filed, Defendants denied that they knew about the Instagram account in a Bill of Discovery Action filed in state court.  Plaintiff contends that if the Court does not find direct evidence as to the intent to deprive, at the minimum there is circumstantial evidence that the Court may consider reflecting Defendants' intent to deprive.

Plaintiff contends that it has been prejudiced by the loss of the ESI because the impostor accounts are crucial to Plaintiff's claims.  Additionally, Plaintiff states that there is no way to know whether Defendants had any further communications with third parties through either account.  Similarly, Plaintiff contends that it knows for certain that Mr. Joseph did communicate via text regarding matters relevant to this action, indicating Defendants' bad faith, through text messages discovered through Mr. Van Middlesworth's iCloud backups.  Therefore, Plaintiff requests that the Court enter default judgment against Defendants on certain counts and further instruct the jury that the deleted text messages would have been unfavorable to Defendants on each of the remaining counts.

Defendants respond that the Instagram account was kept private and was only meant to be seen by the few people who would understand that it was a joke.  Once Defendants realized that creating a fake Instagram account for another company was actionable, Defendants' counsel instructed Defendants to stop the account.  Defendants' counsel meant for the account to be "stopped," but Defendants' CFO, Ms. Van

Middlesworth, took that instruction to mean delete the account. ECF No. 166 at 2. Defendants argue that Ms. Van Middlesworth had no idea that the content stored on the account would be relevant or necessary because there were only two posts and anything that was needed was already copied and preserved.   In Defendants' view, Ms. Van Middlesworth believed she was doing the right thing, and thus not acting in bad faith, by shutting down the account that was the cause of the lawsuit.

In regard to Mr. Joseph's text messages, Defendants contend that Mr. Joseph bought his phone in 2017-18.   At this time, his settings were changed to delete text messages after thirty days.  When he lost his phone and received a new one, Defendants claim his phone was backed up from his previous settings.   Therefore, according to Defendants, he never actively changed the retention setting to delete messages after thirty days during the pendency of this litigation.

Next, Defendants argue that they never had access to the Gmail account because they lost the password.  Once ordered by the Court to take the necessary steps to access the account, they realized that Google had deactivated the account due to inactivity. Lastly, Defendants argue that the Court should find there was no bad faith because Defendants contend that the information is not material or crucial to Plaintiff's claims. Defendants contend that what Plaintiff must prove is the confusion caused by the Instagram page, not its existence, and therefore the contested evidence is not relevant.

    B.     *Analysis*

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009). "Sanctions

for spoliation of the evidence 'are intended to prevent unfair prejudice to litigants and to ensure the integrity of the discovery process.'" *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.,* 736 F. Supp. 2d 1317, 1323 (S.D. Fla. 2010) (quoting *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005)).  Spoliation of ESI is governed by Federal Rule of Civil Procedure 37(e).

> Federal Rule of Civil Procedure 37(e) states:
>
> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
>> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>>
>> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>>> (A) presume that the lost information was unfavorable to the party;
>>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

Prior to imposing sanctions under 37(e), the court must determine that: "(1) the information sought constitutes ESI; (2) the ESI should have been preserved in anticipation of litigation; (3) the ESI is lost because a party failed to take reasonable steps to preserve it; and (4) the ESI cannot be restored or replaced through additional discovery." *NITV Fed. Servs. LLC v. Dektor Corp.*, No. 18-80994-CIV-BRANNON, 2019 WL 7899730, at *3 (S.D. Fla. Sept. 20, 2019) (citations omitted). "If these four threshold requirements are met, sanctions may be warranted if the Court finds prejudice or that the spoliating party acted with the intent to deprive the moving party of the ESI." *Id.*

The Court is given discretion on how to determine prejudice under Rule 37(e). Intent to deprive may be found on circumstantial evidence if: "(1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator." *Id.* (citations omitted).  Courts in this district have likened the intent to deprive standard with that of bad faith.  *See Incardone v. Royal Caribbean Cruises, LTD.*, Case No. 16-20924-CIV-MARTINEZ/GOODMAN, 2019 WL 3779194, at *18 (S.D. Fla. Aug. 12, 2019); *Living Color Enters., Inc. v. New Era Aquaculture, LTD.*, Case No. 14-62216-MARRA/MATTHEWMAN, 2016 WL 1105297, at *6 n.6 (S.D. Fla. Mar. 22, 2016) (noting that the intent to deprive standard may very well be harmonious with the bad faith standard).

Here, the undersigned finds that the four threshold requirements have been met in regard to the Instagram account, Gmail account, and the text messages. First, all three certainly qualify as ESI, as they are the essence of information stored electronically.  The undersigned also finds that this ESI should have been preserved.  Whether evidence should have been preserved or if the duty to preserve has attached is determined by whether litigation was pending or reasonably foreseeable when the spoliation occurred. *Graff*, 310 Fed. App'x at 301.  Here, both the Instagram account and the Gmail account were deleted and deactivated during the pendency of this litigation.  Thus, Defendants had a duty to preserve these two accounts well before they were deleted or deactivated.

Turning to the text messages, whether these should have been preserved is a more complicated matter.  The duty to preserve attached when litigation was reasonably foreseeable.  Here, that would have been when Plaintiff filed the bill of discovery in state court or when the instant action was filed.  Either way, from these points on, Defendants' duty to preserve these text messages attached.

Next, the undersigned must address whether the spoliated ESI was lost because Defendants failed to take reasonable steps to preserve it.  The undersigned finds that it is unambiguous that Defendants failed to take reasonable steps to preserve the Gmail account and the Instagram account.  Throughout litigation, the impostor Gmail account has been the subject of many motions to compel brought by Plaintiffs.  Defendants contended that they did not know the password to the account and therefore could not access the information.  In this day and age, the undersigned finds it baffling that attorneys practicing in the field of intellectual property do not know how to use the function "forgot password."  When the undersigned ordered Defendants to utilize that function, long after this litigation commenced, Defendants realized that the Gmail account had been deactivated.  The undersigned finds this failure enough to determine that Defendants failed to take reasonable steps to preserve the Gmail account.

Turning to the Instagram account, a generous reading allows that the account was deleted under the misunderstood advice of counsel.  Because ESI often exists in multiple locations, if that information is lost from one source, such loss may be harmless if substituted information can be found elsewhere.  *See Living Color Enters.*, 2016 WL 1105297, at * 5 (quoting the Advisory Committee Notes to Rule 37(e)).  There are preserved screen shots of the Instagram account, which depict the number of followers,

9

posts, and the number of accounts the account follows.  Thus, not all of the information is lost.  However, there is certain information not depicted in the screenshot that cannot be recovered. For example, whom the account was following, or what was posted, cannot be determined. These are things important to Plaintiff's case, and which Defendants had a duty to preserve.  The undersigned finds that even given Defendants' excuses, Defendants failed to take reasonable steps to preserve the Instagram account.  It was incumbent upon Defendants to ensure the account was not deleted, and yet they failed at even this most basic task.

Turning to the text messages, it seems some of Mr. Joseph's messages have been produced with discovery from Mr. Van Middlesworth.  Thus, at least some of the text messages were not lost.  Therefore, sanctions under Rule 37(e) are not available with respect to these produced messages because sanctions or curative measures under the rule are only available if the ESI is lost.  *See id.*  However, it also appears that there are text messages that should have been preserved and were not, which were therefore lost. As with the majority of ESI at issue, the undersigned finds that Defendants failed to take reasonable steps to preserve these remaining text messages.

The final question of the threshold requirements the undersigned must address is whether the spoliated ESI evidence cannot be restored or replaced through additional discovery.  Here, the undersigned finds that the spoliated evidence cannot be restored or replaced through additional discovery.  The Court has already ordered a forensic search of Defendants' devices.  As mentioned above, this search led to the discovery of some— but not all—text messages.  However, the Instagram and Gmail accounts, as well as other

text messages, cannot be found, restored, or replaced.  Thus, the spoliated ESI cannot be restored or replaced through additional discovery.

Because the undersigned finds that the threshold requirements under Rule 37(e) have been met, the undersigned must continue and analyze the facts at hand under subsection (e)(1) to determine whether to make a finding of prejudice or under subsection (e)(2) to determine whether there was an intent to deprive.

When determining prejudice, the 2015 Advisory Committee's notes to Rule 37(e)(1) state that:

> the rule does not place a burden of proving or disproving prejudice on one party or the other. Determining the content of lost information may be a difficult task in some cases, and placing the burden of proving prejudice on the party that did not lose the information may be unfair. In other situations, however, the content of the lost information may be fairly evident, the information may appear to be unimportant, or the abundance of preserved information may appear sufficient to meet the needs of all parties. Requiring the party seeking curative measures to prove prejudice may be reasonable in such situations. The rule leaves judges with discretion to determine how best to assess prejudice in particular cases.

Here, the Court finds it difficult to ascertain the amount of prejudice Plaintiff has suffered due to Defendants' spoliation of evidence.  While the loss of the ESI is somewhat prejudicial, Plaintiff has the requisite information required to establish its claims. Defendants have admitted to opening the Instagram and Gmail accounts.  Defendants contend that the sole purpose of the Gmail account was to establish the Instagram account and the email account was not used for any other purposes.  This is supported by the fact that the account was removed by Google due to inactivity.  As to the Instagram account, Defendants argue that the account was private, had zero followers, and was only shared with those who knew it was meant as a joke.

Plaintiff counters that there is information not readily available on the surface of the account and that Defendants could have been messaging clients or potential clients. The undersigned finds this argument to be lacking as there is no other evidence to show that this is true.  However, the undersigned finds Plaintiff's concern that there are other text messages from Mr. Joseph that may indicate bad faith to have some merit, because there have been other text messages produced during discovery that show this may be true.  Therefore, in regard to the Instagram and Gmail account the undersigned finds that Plaintiff has not suffered any prejudice or any such prejudice suffered is harmless.

However, as to the text messages, the undersigned does find that Plaintiff has suffered some prejudice.  Little perhaps, but nonetheless some.  The text messages lost could have provided *additional* evidence of Defendants' bad faith scheme to direct consumers away from Plaintiff's services to their own.  However, there is already an abundance of evidence that demonstrates this was Defendants' intent, including Defendants' own admission of such.  Therefore, while Plaintiff has suffered some prejudice, Plaintiff has information sufficient to meet the needs to establish the allegations raised in its Complaint.  Therefore, the undersigned finds any prejudice suffered by Plaintiff to be so minimal that it is not necessary to order the requested measures to cure the prejudice.

The undersigned must next consider the "intent to deprive" standard laid out in Rule 37(e)(2), which also allows the Court to impose more severe spoliation sanctions. Here, while Defendants may have spoliated evidence, the undersigned does not find any direct evidence of the "intent to deprive."  Defendants deleted the Instagram account on

arguably misunderstood advice of counsel. While perhaps negligent, this does not rise to the level of intent to deprive or bad faith.

Further, Defendants do not have control over Google's deactivation procedures. While Defendants could have attempted to use the "forgot password" function prior to being ordered to do so, the undersigned again finds that this does not equate to intent to deprive. Lastly, the Court will give Defendants the benefit of the doubt and assume that Mr. Joseph's text messages were set to delete after thirty days prior to the commencement of this litigation.   Although he may have purchased a new phone, Defendants' counsel contends that Mr. Joseph incorporated his phone's previous setting, which would have included the thirty-day-deletion-of-messages setting.   Defendants' counsel should have told Defendants to preserve or retain their messages once litigation was reasonably foreseeable, but, again, this does not equate to bad faith or the intent to deprive.

The undersigned also notes that messages Plaintiff seeks regarding Defendants' bad faith intent, if such messages were deleted after thirty days, would have been deleted prior to the start of litigation.  Therefore, the undersigned finds that Defendants' spoliation of evidence, while negligent, does not equal the intent to deprive or bad faith.  *See Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184 (11th Cir. 2020) ("Spoliation sanctions— and in particular adverse inferences—cannot be imposed for negligently losing or destroying evidence.").

Therefore, based on the foregoing, the undersigned recommends that Plaintiff's Motion for Default Judgment, ECF No. 136, be DENIED.  However, should Defendants open the door at trial by arguing, for example, that there are no other text messages or

that the Instagram account or Gmail account do not show any intent of bad faith, then Plaintiff should notify the District Court immediately and request that Defendants either be prohibited from so arguing, or request an adverse inference that the deleted messages would have shown Defendants' bad faith.  In other words, although the undersigned recommends against imposing the severe sanctions requested by Plaintiff, Defendants should expect consequences if they attempt to take advantage of this recommendation at trial.

## IV.    Plaintiff's Motion for Summary Judgment

### A. *Parties' Arguments*

Plaintiff moves for summary judgment on counts 1, 2, 4, and 5. Plaintiff contends it is entitled to summary judgment against Defendant on count one (Federal Anti-Cybersquatting ("ACPA")), on the grounds that it owns the mark that was used in the six domains registered by Defendants to direct traffic to Defendants' website.  Plaintiff argues that the word "Marksman" together with the red shield design were registered on the Principal Register of the United States Patent and Trademark on October 16, 2018. Plaintiff argues that the marks are distinctive and therefore valid.  Plaintiff argues that Defendants purchased these domains with the intent to steal clients and direct business to their company in bad faith.  Indeed, Plaintiff contends that Defendants' corporate representative admitted in his deposition that Defendants purchased the domains specifically to drive clients to their website.

Next, Plaintiff requests that the court grant an injunction to prevent future violations.  Plaintiff argues that it has suffered irreparable harm from Defendants' use of its mark, that the balance of hardships weighs in Plaintiff's favor, and that the public

interest weighs strongly in favor of a permanent injunction to prevent confusing customers.

Plaintiff argues that it is entitled to summary judgment on the remaining counts because Defendants engaged in federal and common law unfair competition and violated the Florida Deceptive and Unfair Trade Practices Act. Plaintiff argues that the fake good reviews on Defendants' Google page which were paid for by Defendants constitute commercial speech; were aimed to deceive consumers; had a material effect on the consumers' purchasing decisions regarding Plaintiff's services; and induced consumers to purchase Defendants' services. Plaintiff argues that the fake good reviews on Defendants' Google account satisfy this count and that judgment should be entered in favor of Plaintiff in the amount of $24,564,954.60.

Defendants respond and acknowledge that the tit-for-tat antics between the companies escalated too far. Defendants contend that in an effort to increase their Google presence they hired Cameron Underwood, who sought out twelve witnesses who could give positive testimonials regarding Defendants' services. Defendants concede that at least three out of the twelve reviews were false because the individuals did not live in a building that Defendants serviced.

Defendants next argue that Plaintiff's anti-cybersquatting claims fail because Plaintiff's marks are not distinctive. Defendants contend that Plaintiff's marks are not suggestive, but rather are descriptive because it is not a stretch of the imagination to connect a marksman to a security service company. Next, Defendants claim that there is at a minimum a question of fact as to the level of distinctiveness which falls within the purview of a jury. Defendants argue that Plaintiff's registered marks are for the word

Marksman and the symbol but not the word security.  Defendants also maintain that Defendants use of the domains was non-commercial because it gained no customers via the use of the domains.  Defendants also argue that while two of the factors indicating bad faith may favor Plaintiff, the majority are either neutral or favor a finding that there was no bad faith.  Next, Defendants contend that Plaintiff is not entitled to their gross profits because no customers were derived from the domains, as evidenced by Mr. Joseph's sworn affidavit.  Thus, at a minimum, the issue of whether customers were derived from the misleading domains should be decided by a jury.  As to the permanent injunction, Defendants state that there is no need for such a severe remedy because they surrendered the domains and the Instagram account is no longer active.  In regard to the unfair competition claims, Defendants argue that Plaintiff has not been harmed and cannot show it is likely to be harmed by the paid-for Google reviews on Defendants' account.  Thus, Defendants contend that summary judgment should be denied on those counts.

Plaintiff replies that Defendants' arguments should fail because ignorance of the law is no excuse and that self-serving affidavits cannot create a genuine issue of fact. Next, Plaintiff argues that Defendants' own expert's survey concluded that only 2% of people associate a marksman with security services.  Thus, Plaintiff contends that Defendants' argument that Plaintiff's marks are descriptive rather than suggestive fails. Plaintiff argues that it is entitled to Defendants' gross profits because Defendants' self-serving affidavit is not enough credible evidence to show any deductions.  Thus, Plaintiff is entitled to the gross sales number because Defendants failed to meet their burden of demonstrating any deductions.

B.  *Legal Standard*

Summary judgment is appropriate where there is "no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed R. Civ. P. 56.  An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law that might affect the outcome of the case. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).  An issue of fact is "genuine" if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. *Id.* "For factual issues to be considered genuine, they must have a real basis in the record." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted).

The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. *See Tyson Foods, Inc.*, 121 F.3d at 646 (citation omitted).  In deciding whether the moving party has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party. *Denney v. Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001). Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to come forward with evidence showing a genuine issue of material fact that precludes summary judgment. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); *see also* Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Tyson Foods, Inc.*, 121 F.3d at 646 (citations

omitted).  But if the record, taken as a whole, cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

C. *Discussion*

1. Count I Federal Anti-Cybersquatting ("ACPA")

"[A} person shall be liable in a civil action by the owner of a mark . . . [if] that person . . . has a bad faith intent to profit from that mark . . . and . . . registers, traffics in, or uses a domain name that . . . in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark." *Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 778–79 (11th Cir. 2015) (quoting 15 U.S.C. § 1195(d)). "[C]ybersquatting occurs when the cybersquatter 'intend[s] to profit by diverting customers from the website of the trademark owner to the defendant's own website, where those consumers would purchase the defendant's products or services instead of the trademark owner's.'"  *Id.*  (quoting *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1246 (11th Cir. 2009).

The undersigned finds, and Defendants do not dispute, that Plaintiff owns the registered word "Marksman" and the red design mark.  The Marks were registered on the Principal Register of the United States Patent and Trademark ("USPTO").

The undersigned must now determine whether Plaintiff's marks are distinctive.  A trademark qualifies as distinctive if it is either inherently distinctive or it acquires distinctiveness over time.  *Royal Palm Properties, LLC v. Pink Palm Properties, LLC*, 950 F.3d 776, 782 (11th Cir. 2020).  "Whether a mark has either inherent or acquired distinctiveness is a question of fact."  *Engineered Tax Servs., Inc., v. Scarpello*

18

*Consulting, Inc.*, 958 F.3d 1323, 1327 (11th Cir. 2020) (citing *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1357 (11th Cir. 2007)).  A mark's level of distinctiveness has been classified into four categories: fanciful or arbitrary; suggestive; descriptive; and generic.  *Royal Palm Properties, LLC*, 950 F.3d at 782.  In this case, the issue only pertains to whether the mark is suggestive or descriptive. The undersigned will therefore not address the meaning of fanciful or arbitrary and generic.

A suggestive mark is one where the name is a real word that bears a slight relationship to the product.  *Royal Palm Properties, LLC*, 950 F.3d at 782; *see also Welding Servs. Inc.*, 509 F.3d at 1357–58 (stating that a suggestive mark requires a leap of the imagination to get from the mark to the product).  Suggestive marks are inherently distinctive and require no proof of secondary meaning to be protectable.  *Royal Palm Properties, LLC*, 950 F.3d at 783.  A descriptive mark, on the other hand, identifies a characteristic or quality of the service or product.  *Welding Servs. Inc.*, 509 F.3d at 1358. A descriptive mark is only protectable if it acquires distinctiveness by obtaining a "secondary meaning."  *Id.*

Courts routinely apply two legal tests to distinguish suggestive marks from descriptive marks, most commonly known as the "imagination" test and the "third-party-use" test.  *Engineered Tax Servs. Inc.*, 958 F.3d at 1329.  A mark is merely descriptive, rather than suggestive—and thus is not inherently distinctive—if "the customer who observes the term can readily perceive the nature of plaintiff's services, without having to exercise his imagination."  *Id.* at 1329 (quoting *Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1524 (11th Cir. 1991)).  The third-party-usage test requires the Court to determine "whether competitors would be likely to need the

terms used in the trademark in describing their products." *Id.* at 1331. It stands to reason that if a competitor needs the mark to describe its own product then the mark must not be distinctive. *Id.*

When a mark has been registered with the USPTO, the mark acquires a rebuttable presumption that the mark is protectable or distinctive. *Id.* (citing *Welding Servs. Inc.*, 509 F.3d at 1357 n.3). Further, the Eleventh Circuit has suggested that trademark holders are not entitled to rebuttable presumptions of both inherent and acquired distinctiveness—it is either one or the other. *Id.* Which presumption applies depends on the registration process. *See id.* The mark is entitled to the presumption of inherently distinctive when no proof of secondary meaning is provided as part of the registration process. *Engineered Tax Servs. Inc.*, 958 F.3d at 1331. Naturally, if proof of secondary meaning is provided during the registration process then the mark is entitled to the presumption that it has acquired distinctiveness. *See id.*

"[T]o successfully challenge a registered mark on distinctiveness grounds, the challenger must overcome the presumption of validity by showing—by a preponderance of the evidence—that the mark is not distinctive." *Id.* If the challenger successfully rebuts the presumption, the burden shifts to the mark holder to prove distinctiveness. *Id.* Here, the undersigned finds that Defendants have not met their burden.

Plaintiff registered its marks with USPTO and was not required to provide proof of secondary meaning. Accordingly, Plaintiff is entitled to the rebuttable presumption that its marks are inherently distinctive. The crux of Defendants' argument is that Plaintiff's marks are not distinctive because "it does not require a stretch of the imagination to connect a marksman and a security service company." ECF No. 169 at 6. Defendants

support this allegation by submitting a survey conducted by Defendants' expert questioning adults on what they associate Plaintiff's marks with.  ECF No. 169-1. However, Defendants' own survey disputes the crux of their argument as the survey reveals that only 2% of the adults surveyed associated Plaintiff's marks with military or law enforcement.  ECF No. 169-1 at 5.  The majority of adults surveyed associated the marks with guns or other activities involving shooting or archery.  ECF No. 169-1 at 5-6. In actuality, Defendants' survey supports the imagination test indicating that the marks are suggestive rather than descriptive because the adults surveyed have to make a leap of imagination to associate Plaintiff's marks with Plaintiff's provided services.  The undersigned finds that this does not overcome the presumption of validity by a preponderance of the evidence.

Nor does Defendants' statement of facts, which attaches a printout of another company named Marksman Security in Nepal, help Defendants dispute the presumption. The distinctiveness inquiry takes into consideration relevant geographical boundaries. *Tana v. Dantanna's*, 611 F.3d 767, 776 (11th Cir. 2010).  The fact that two companies on opposite sides of the world share a name does not affect its uniqueness within its relative geographical reach.  Thus, the undersigned finds that Defendants have not overcome the presumption and that Plaintiff's marks are suggestive and inherently distinctive.

The next issue the undersigned must address under the count is whether Defendants had a bad faith intent to profit from Plaintiff's marks.  The Anti-Cybersquatting Statute provides nine factors that may be considered by the court when determining whether a person "ha[d] a bad faith intent to profit from th[e] mark." 15 U.S.C. § 1125(d)(1)(B)(i).  Those factors are:

1. Whether the defendant has a "trademark or other intellectual property rights" in the domain name;

2. Whether the domain name refers to the legal name of the defendant;

3. Whether the defendant ever used the domain name "in connection with the bona fide offering of any goods or services;"

4. Whether the defendant has a "bona fide noncommercial or fair use of the mark in a site accessible under the domain name;"

5. Whether the defendant has an "intent to divert consumers" from the mark owner's website to his own, either for commercial gain "or with the intent to tarnish or disparage the mark," when that diversion could cause harm to the mark owner's goodwill;

6. Whether the defendant offers to transfer or sell the domain name for financial gain when he has not used or had an intent to use the domain name in connection with "the bona fide offering of any goods or services;"

7. Whether the defendant provides "material and misleading false contact information when applying for the registration of the domain name" or the defendant "intentional[ly] fail[s] to maintain accurate contact information;"

8. Whether the defendant acquired multiple domain names that the defendant knows are identical or confusingly similar to distinctive marks; and

9. Whether the mark is distinctive or famous.

*Jysk Bed'N Linen*, 810 F.3d at 776; 15 U.S.C. § 1125(d)(1)(B)(i).  The Court may consider these factors on summary judgment and is not limited to these nine factors to determine whether there was a bad faith intent to profit.  *Jysk Bed'N Linen*, 810 F.3d at 775; *Victoria's Cyber Secret*, 161 F. Supp. 2d at 1347.  It comes as no surprise that the Parties disagree on which factors are met.

Defendants properly concede that factors one and two favor Plaintiff.  However, Defendants argue that factor three favors Defendants.  Defendants argue that Plaintiff's marks are the word Marksman and the logo and not the combined mark of marksmansecurity.  Thus, Defendants argue that there is a genuine issue of material fact as to whether the domains in question infringed Plaintiff's marks at all.  Plaintiff responds

that Defendants misread what the factor states.  The undersigned agrees with Plaintiff – factor three requires the Court to determine whether Defendants ever used the domains in connection with a bona fide offering of any goods or services.  Defendants have admitted that they registered the domains solely for the purpose of redirecting business their way.  Thus, the undersigned finds that factor three favors Plaintiff.

Likewise, Defendants' argument as to factor four, that no customers were diverted as a result of the registered domains, also fails.  Again, the Court is to consider whether Defendants had a bona fide non-commercial or fair use of the mark.  Even if no customers were diverted, Defendants admitted that the claimed purpose of the registered domains were to direct business their way.  As the admitted purpose of using the mark was directing clients toward Defendants' business, Defendants cannot credibly argue either non-commercial or fair use, and thus this factor also favors Plaintiff.

As to factor five, whether Defendants had an intent to divert consumers from the mark holder's website to their own, Defendants argue that "intent alone" does not suffice for this factor and that Plaintiff provided no evidence that customer confusion existed.  Once again, Defendants misconstrue the factor to be examined.  The factor does not mention consumer confusion.  Nor do Defendants provide any case law or support for their conclusory statement that intent alone does not suffice for this factor.  Defendants' own admission that they tried to "direct business their way" demonstrates their intent to divert consumers from Plaintiff's website to their own.  When accessed, the domains would direct potential consumers to Defendants' website.  Thus, the undersigned finds this factor favors Plaintiff.

There appears to be no contention that Defendants attempted to transfer or sell the domain name for financial gain, so factor six favors neither side.  As for factor seven, Defendants contend that this factor favors them because Mr. Joseph used the company email, credit card, and his personal name to purchase the domain names.  Plaintiff contends that Defendants used a "proxy to disguise themselves to register the domains." Plaintiff supports this allegation with the domain's registrations provided by Godaddy.com.  ECF No. 158-9.  The registrations do indeed show that the registrant was provided by "proxy" and nowhere within the registrations are Defendants' names. However, the undersigned will not weigh this factor to the favor of either party.

Defendants contend that both factors eight and nine relate to the marks' distinctiveness and incorporate their earlier raised arguments.  As the undersigned has already found the marks to be inherently distinctive, factor nine favors a finding of bad faith.  Factor eight requires the Court to consider whether Defendants acquired domains that Defendants knew were identical or confusingly similar to distinctive marks.  As mentioned earlier, it is undisputed that Defendants acquired six domain names that all had intentional misspellings of Plaintiff's website.  Defendants knew the domain names were confusingly similar because the acquired domain names all contained intentional misspellings.  Should a consumer misspell Plaintiff's website, they would likely be directed to Defendants' website.  Looking at the domains objectively, no reasonable juror could conclude that the domain names were not confusingly similar.  Thus, the undersigned finds that this factor also favors a finding of bad faith.

Lastly, under the ACPA, the undersigned must compare the infringed marks with the domains to determine whether "they are so similar in sight, sound or meaning that

confusion is likely." *Heron Dev. Corp. v. Vacation Tours, Inc.*, No. 16-20683-CIV-MORENO, 2018 WL 2943217, at *7 (S.D. Fla. June 12, 2018).  Here, the undersigned finds that the domains are confusingly similar to Plaintiff's trademark.

Plaintiff's marks are the word "Marksman" and the accompanying logo.  Plaintiff provides security services and Defendants also provide security services.  Defendants' corporation's corporate name is Platinum Secuirty Group and does business as PG Security.  The domains purchased by Defendants to direct traffic to their website were: marksmensecurity.com;        marksmansecurity.net;        marksmensecurity.net; marskemensecurity.org; marksmensecurity.info; and markmansecurity.com.  Plaintiff's domain    is    marksmansecurity.com,    while    Defendants'    domain    is platinumgroupsecurity.com.  When comparing the purchased domains with Plaintiff's marks, the undersigned finds that the domains and Plaintiff's mark look almost identical, except for the word security, and do not substantially differ in meaning.

Defendants allege that including the word security dispels the similarity.  However, the undersigned finds such an argument to be without merit in a case where Defendants incorporated Plaintiff's entire mark "marksman" and added a generic word such as security.  *See Victoria's Cyber Secret Ltd. v. Secret Catalogue, Inc.*, 161 F. Supp. 2d 1339, 1351 (S.D. Fla. 2001) ("Unlike a traditional trademark dispute, where identical marks can be used, only one party can register a domain name, thus the slight differences between domain names and registered marks, such as the addition of minor or generic words to the disputed domain names are irrelevant."). The domain names are clear misspellings of Plaintiff's marks with Defendants' admitted intent to drive traffic to their website.  Any internet user seeking Plaintiff's website who may have accidentally spelled

it incorrectly in any of these six ways would be sent to Defendant's website, which just so happens to offer security services.  Any internet user could assume that the domain was either modified, used, or permitted by Plaintiff.  Thus, the undersigned finds that the domain names are confusingly similar to Plaintiff's trademarks.

Therefore, for the reasons stated above, the undersigned finds that Defendants have violated the ACPA and recommends that summary judgment be entered in favor of Plaintiff on Count I.

2.  Damages

While the undersigned recommends that summary judgment be entered in favor of Plaintiff, what is difficult to recommend is the relief to which Plaintiff is entitled.  The Court can award damages under 15 U.S.C. § 1117(a) for Lanham Act violations.  That section states:

**(a) Profits; damages and costs; attorney fees**

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

Plaintiff seeks to disgorge $65,000,000 in profits from Defendants and contends that Defendants have not met their burden in showing any deduction.  Defendants' counterargument can be summarized as "no harm no foul."  Specifically, Defendants contend that no customers were ever diverted from Plaintiff, thus none of Defendants' profits should be disgorged because no profits were obtained from the alleged infringement.

"As recognized by the Eleventh Circuit, Section 1117(a) vests considerable discretion in the district court." *Rain Bird Corp. v. Taylor*, 665 F. Supp. 2d 1258, 1271 (N.D. Fla. 2009) (citing *Burger King, Corp. v Mason,* 710 F.2d 1993, 1495 (11th Cir. 1983)).  "Guided by the principles of equity, the court may award the defendant's profits." *Id.*  Notably, "[t]he statute also provides for the adjustment of any profits award if it is inadequate or excessive. This remedial accommodation clearly envisions the exercise of the trial judge's discretion." *Id.*

"Certain principles should guide the district court in the exercise of its discretion. First, an award of attorney's fees is proper only in 'exceptional cases.'" (*Id.* quoting 15 U.S.C. § 1117(a).)   An exceptional case is one "that can be characterized as malicious, fraudulent, deliberate and willful, or a case where there is evidence of fraud or bad faith." *Id.* (internal citations omitted.) "Second, there is no automatic right to enhanced damages. Trial judges have wide latitude in determining a just amount of recovery for trademark infringement."  *Id.* (citing *Burger King, Corp.,* 710 F.2d at 1495).

Here, the undersigned finds that recovery based on unreduced profits is excessive, and notes that Plaintiff's counsel conceded as much at the hearing on the Motion.  Plaintiff alternatively seeks statutory damages in the event, as here, the Court determines Plaintiff

is not entitled to Defendants' profits.  ECF No. 136 at 16 n.12.  The undersigned finds that Plaintiff is entitled to statutory damages.

> In a case involving a violation of section 1125(d)(1) of this title, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just.

15 U.S.C. § 1117(d).   Plaintiff contends that Defendants' wrongdoing warrants the maximum available award of $100,000 per domain for a total of $600,000.   The undersigned disagrees, and instead finds that Plaintiff is reasonably entitled to damages in the amount of $60,000, or $10,000 per domain, in keeping with similar awards in this District.  *See Victoria Cyber Secret Ltd.*, 161 F. Supp. 2d at 1356 (awarding $10,000 per domain).

### 3.  Unfair Competition and FDUPTA Counts

Plaintiff next moves for summary judgment on Counts II, IV, and VI, which assert claims for federal and common law unfair competition and violations of FDUPTA.  Plaintiff argues that the fake positive reviews on Defendant's Google page that Defendants paid for constitute commercial speech; that such speech was aimed to deceive consumers; that the speech had a material effect on the consumers' purchasing decision of Plaintiff's security; and that the speech instead made consumers purchase Defendants' services. Plaintiff argues that the fake positive reviews on Defendants' Google account satisfy these necessary elements of these counts; that judgment should be so entered; and that Plaintiff should be awarded for $24,564,954.60.   Defendants respond that summary judgment should not be entered on these counts because Plaintiff cannot establish that it has been harmed or is likely to be harmed.

Plaintiff submits that the claims for unfair competition under the Lanham Act, common law unfair competition, and claims for unfair competition brought under FDUPTA may be analyzed simultaneously.  Defendants do not contest this proposition.

The Federal Unfair Competition Statute in relevant part states:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. 1125(a)(1).  To establish a prima facie case of false advertising pursuant to 15 U.S.C. § 1125(a), as Plaintiff seeks to do here, "the plaintiff must establish the alleged infringing conduct constitutes 'commercial advertising or promotion.'"  *Verbena Prods. LLC v. Pierre Fabre Dermo-Cosmetique USA, Inc.*, No. 19-23818-CIV-SCOLA, 2020 WL 2988587, at *3 (S.D. Fla. Feb. 28, 2020).  To make this determination the Eleventh Circuit requires the representations in question to be:

> (1) commercial speech;  [(2)] by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services.  While the representations need not be made in a classic advertising campaign, but may consist instead of more informal types of promotion, the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within that industry.

*Id.* (quoting *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1349 (11th Cir. 2012)).  Usually, consumer reviews do not constitute commercial speech.  *See GOLO, LLC v. HighYA, LLC*, 310 F. Supp. 3d 499, 507 (E.D. Penn. 2018) (holding that consumer reviews on Defendant's website of Plaintiff's product do not qualify as commercial speech).  However, the undersigned finds here that Defendants paid individuals to post positive reviews online for them.  Such actions elevate these paid-for reviews to commercial speech.  Further, the undersigned finds that Plaintiff and Defendant PG are in competition with each other, the reviews were for the purpose of influencing consumers to purchase Defendant PG's services, and that the speech was disseminated sufficiently to the relevant purchasing public because it was posted to their business page on Google as a public review for any would-be consumer to see when searching for Defendant PG's services.

The Eleventh Circuit also requires a plaintiff asserting a false advertising claim to establish that:

(1) the defendant's statements were false or misleading;

(2) the statements  deceived, or had the capacity to deceive, consumers;

(3) the deception had a material effect on the consumers' purchasing decision;

(4) the misrepresented service affects interstate commerce; and

(5) it has been, or likely will be, injured as a result of the false or misleading statement.

*Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of Knights Hospitallers of Sovereign Order of Saint John of Jerusalem, Knights of Malta, Ecumenical Order (Sovereign Military),* 702 F.3d 1279, 1294 (11th Cir. 2012).

Here, there can be little dispute as to whether the reviews are false.  Defendants paid for positive reviews from at least three individuals who never lived in a building that Defendant PG serviced.  Therefore, this element is met.  These reviews are false and misleading representations of Defendants' services.  And because these reviews are *literally false*, Plaintiff need not produce evidence that the fake reviews deceived or had the capacity to deceive consumers.  *See Johnson & Johnson Vision Care, Inc. v. 1-800 Contact, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002) (stating that once a court deems an advertisement to be literally false, the movant need not present evidence of consumer deception).

However, the undersigned finds that the element of materiality and the element that Plaintiff has been injured or is likely to be injured have not been met.  To establish materiality, the plaintiff must establish that "the defendant's deception is likely to influence the purchasing decision."  *Id.* at 1249.  "A plaintiff may establish this materiality requirement by proving that the defendants misrepresented an inherent quality or characteristic of the product."  *Id.* (internal quotations omitted).  Plaintiff alleges that the false reviews go to the inherent quality of Defendant PG's services, as the reviews refer to them as the "best," "great company," "great company to work for," and keep "buildings safe and comfortable."  The undersigned finds that these claims are mere puffery regarding Defendant PG's qualities.  *See USA Nutraceuticals Grp., LLC v. BPI Sports LLC, et al.*, Case No. 15-80352-CIV-BLOOM/VALLE, 2016 WL 4250668, at *2 (S.D. Fla. Apr. 12, 2016) ("Vague or highly subjective claims of product superiority generally fall within the category of non-actionable puffery.").

Lastly, Plaintiff alleges that it has been injured or will likely to be injured as result of the fake reviews.  Plaintiff, citing *Tracfone Wireless, Inc. v. Adams*, 98 F. Supp. 3d 1243, 1258-59 (S.D. Fla. 2015), contends that part of its injury is the costs associated with pursuing this action against Defendants.  In *TracFone Wireless Inc.*, the court found that the defendant committed false advertising because he misled consumers into thinking they were purchasing legitimate products that belonged to or were associated with the plaintiff.  *Id.* at 1258.  The court found that plaintiff had been injured because plaintiff "*lost sales that it normally would have made*," where there was evidence of such, and was forced to incur costs associated with preventing future misconduct.  *Id.* at 1244, 1258–59 (emphasis added).

In contrast, Plaintiff here alleges damages or harm that is speculative.  Plaintiff has not brought forth any evidence or facts that show that it lost sales due to these Google reviews. Nor has Plaintiff tied the Google reviews to any loss of sales Plaintiff may have suffered.  Therefore, the undersigned finds that Plaintiff's claims fail this element.  While it is true that Plaintiff has incurred costs in pursuing this action, those costs can be recouped separately by pursuing attorneys' fees and costs, as Plaintiff has requested in its Motion.  Therefore, the undersigned recommends that Summary Judgment on Plaintiff's federal trademark infringement claims, federal and common law unfair competition claims, and claims brought under FDUPTA be DENIED.  *See Casa Dimitri Corp v. Invicta Watch Co.*, 270 F. Supp. 3d 1340, 1362 (S.D. Fla. 2017) ("Certain state law claims are sufficiently similar to Lanham Act claims such that the legal analysis for Lanham Act claims applies to those state law claims.  This is true for . . . claims of unfair competition . . . and FDUTPA.").

4. <u>Permanent Injunction</u>

The Lanham Act provides that:

[C]ourts . . . shall have power to grant injunctions to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title. A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order.

15 U.S.C. § 1116(a).  "A plaintiff seeking a permanent injunction must demonstrate (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction."  *Angel Flight of Ga. Inc., v. Angel Flight of Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008).

Plaintiff contends that injunctive relief is necessary to prevent Defendants from returning to the infringing activity; that Plaintiff will suffer irreparable injury if Defendants are allowed to continue; that the balance of hardships favors Plaintiff because Defendants will suffer no hardship; and that the public interest weighs strongly in favor of the injunction because it will prevent Plaintiff's marks being used in a manner that is confusing to consumers.  Defendants respond that an injunction is not necessary because Defendants have ceased the infringing behavior, the domains have been surrendered, and that the Instagram Page has been deleted.

Even though Defendants have ceased the activity, this Court has equitable discretion to issue an injunction even after infringing conduct has ceased.  *See Pensacola*

*Motor Sales, Inc. v. E. Shore Toyota, LLC,* 684 F.3d 1211, 1220 (11th Cir. 2012).  Here, the undersigned finds that injunctive relief is not necessary.  Although Defendants did deny the existence of the Instagram account during the Bill of Discovery, the account is no longer active, and Defendants have surrendered the infringing domains.  The two cases relied on by Plaintiff both involve defendants who defaulted.  However, here, the undersigned does not find any evidence that Defendants have used Plaintiff's marks after the lawsuit commenced or any other actions indicating that they would return to such activity.  Thus, the undersigned recommends that Plaintiff's request for injunctive relief be DENIED.

5.   Fees and Costs

Plaintiff requests that this Court award Plaintiff attorney's fees in this action because this case qualifies as an "exceptional case."  The  Lanham  Act  provides  that courts may award reasonable attorney fees to prevailing parties in "exceptional cases."  15 U.S.C. § 1117(a).  "The statute does not define the term 'exceptional,' but the Eleventh Circuit  has  repeatedly  held  that  an  'exceptional'  case  is  one  which  is  'malicious, fraudulent, deliberate and willful, or one in which evidence of fraud or bad faith exists.'" *Tiramisu Int'l LLC v. Clever Imps. LLC*, 741 F. Supp. 2d 1279, 1294 (S.D. Fla. 2010) (quoting *Welding Servs., Inc. v. Forman*, 301 Fed. App'x 862, 862 (11th Cir. 2007)).

Here, the undersigned agrees with Plaintiff that this case qualifies as exceptional. The undersigned found that Defendants purchased the domains in bad faith.  Defendants' reasoning  was  to  drive  would-be  consumers  from  Plaintiff's  website  to  their  own. Defendants deliberately engaged in actions using Plaintiff's marks for their own profits. Regardless of whether Defendants were successful, such actions qualify this case as an

exceptional one.  Should the District Court agree with the undersigned's recommendation regarding the ACPA claims and enter judgment in favor of Plaintiff, the undersigned recommends that Plaintiff be awarded reasonable attorneys' fees.

## V.    RECOMMENDATIONS

Based on the foregoing, the undersigned recommends that Plaintiff's Motion for Default, ECF No. 136, be DENIED in full.  The undersigned further recommends that Plaintiff's Motion for Summary Judgment, ECF No. 159, be GRANTED in part as follows:

1.  Summary Judgment be entered in favor of Plaintiff on Count I under the ACPA.

2.  The Court should decline to disgorge Defendants' profits.

3.  The Court should award statutory damages in the amount of $60,000 ($10,000 per domain).

4.  Summary Judgment should be denied on Counts II, IV, and VI.

5.  Plaintiff should be awarded reasonable attorneys' fees and costs.

6.  Plaintiff's request for a permanent injunction should be denied.

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3–1 (2016); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE and SUBMITTED** in Chambers, at Fort Lauderdale, Florida this 12th day of October 2021.

PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable Aileen M. Cannon
All Counsel of Record