UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 19-62467-CIV-CANNON/Hunt

**MARKSMAN SECURITY CORPORATION**,
a Florida for Profit Corporation,

    Plaintiff,
v.

**P.G. SECURITY, INC.**, d/b/a Platinum Group Security,
a Florida for Profit Corporation, and,
**CAMERON UNDERWOOD**, individually,

    Defendants.
    _____/

## ORDER ADOPTING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS

**THIS CAUSE** comes before the Court upon Magistrate Judge Patrick M. Hunt's Report and Recommendation ("Report"), filed on October 12, 2021 [ECF No. 200]. In the Report, Judge Hunt recommends denying Plaintiff's Motion for Default Judgment on Counts 3, 5, and 7 as a Sanction for Defendants' Spoilation of Evidence ("Motion for Default") [ECF No. 136]. Judge Hunt also recommends that Plaintiff's Motion for Summary Judgment on Counts 1, 2, 4, and 6 [ECF No. 159] be granted in part and denied in part, with an award of attorneys' fees in favor of Plaintiff for Count 1 and no permanent injunction [ECF No. 200, p. 35].

On October 26, 2021, Defendants filed an Objection to the Report, accepting the Magistrate Judge's recommendations on all issues but arguing that the Court should reserve ruling on whether Plaintiff is entitled to attorneys' fees until after the trial has concluded [ECF No. 206, p. 4]. On October 26, 2021, Plaintiff filed its Objections to the Report, claiming three errors: error in an award of statutory damages instead of disgorging Defendants' profits, error in declining to

recommend the issuance of an adverse inference jury instruction, and error in declining to recommend the entry of a permanent injunction [ECF No. 208]. The parties subsequently filed responses to the Objections [ECF Nos. 214, 215, 216, and 217].

The Court has conducted a *de novo* review of the Report, the parties' Objections and responses, the full record in this case, and is otherwise fully advised in the premises. Upon review of the foregoing materials, the Court **ADOPTS IN PART** the Report. Plaintiff's Motion for Default Judgment on Counts 3, 5, and 7 is **DENIED** [ECF No. 136]. Plaintiff's Motion for Summary Judgment is **GRANTED IN PART** as to Count 1 and **DENIED IN PART** as to Counts 2, 4, and 6 [ECF No. 159].

## DISCUSSION

### A. Plaintiff's Motion for Default Judgment on Counts 3, 5, and 7 and Adverse Inference Jury Instruction[1]

In this trademark infringement case, Plaintiff, Marksman Security Corporation ("Plaintiff"), alleges that Defendants, P.G. Security, Inc. d/b/a Platinum Group Security and Cameron Underwood ("Defendants"), intentionally engaged in anticompetitive behavior to harm Plaintiff's business and drive customers to Defendants [ECF No. 159, p. 3]. It is undisputed that, between March 2018 and December 2020, Defendants took the following actions: (1) Defendants registered six website domain names that were similar to Marksman's website name and then redirected traffic from those domains to Defendants' website; (2) Defendants' Vice President, Rony Joseph, created a Gmail account based on the name of Plaintiff's founder, Mark Radi; (3) Defendants used the Mark Radi Gmail account to register an Instagram account with the

---

[1] Defendants did not object to the Magistrate Judge's Report regarding Plaintiff's Motion for Default Judgment [ECF No. 206].

username "Marksmansecurity"; and (4) Defendants hired Cameron Underwood to recruit and pay acquaintances to post positive online reviews about Defendants' company [ECF No. 137 ¶¶ 6–14].

Although Plaintiff was able to obtain screenshots of Defendants' online activity and postings, it became evident during discovery that the Instagram account, the Gmail account, and several of Mr. Joseph's text messages relating to posting fake online reviews were deactivated or deleted during the pendency of this litigation [ECF No. 136, p. 5]. There is no dispute that such evidence no longer exists. Accordingly, as a sanction for Defendants' failure to preserve the electronically stored information ("ESI"), Plaintiff filed a Rule 37 motion urging the Court to enter a default judgment against Defendants on Count 3 (common law unfair competition), Count 5 (Violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201), and Count 7 (misleading advertising under Fla. Stat. § 817.41) in the Second Amended Complaint [ECF No. 136, p. 4]. Plaintiff also requests that the Court issue an adverse inference instruction informing the jury that the deleted ESI would have been unfavorable to Defendants [ECF No. 136, p. 23].

In the Report, Judge Hunt concludes that Defendants had a duty to preserve the ESI and failed to take reasonable steps to do so, but ultimately recommends that Plaintiff's Motion for Default Judgment be denied because Plaintiff suffered minimal prejudice and Defendants did not delete the evidence in bad faith [ECF No. 200, pp. 8–14].

Specifically, on the prejudice prong, Judge Hunt finds that (1) Plaintiff suffered no prejudice for the loss of the Instagram account because screenshots of the account had been produced during discovery, giving Plaintiff information about the number of followers on the page and the number of accounts that the Instagram account itself had followed [ECF No. 200, pp. 9–10]; (2) Plaintiff likewise suffered no prejudice for the lost Gmail account

because its sole purpose was to set up the Instagram account (not to message customers), and it was Google that ultimately deactivated the account due to inactivity [ECF No. 200, pp. 10–11]; and (3) Plaintiff suffered some prejudice due to the deletion of some of Mr. Joseph's text messages,[2] but the loss of that information caused only minimal prejudice, because Plaintiff has ample evidence to prove Defendants' intent, including Defendants' admission of intent to redirect consumers away from Plaintiff toward Defendants [ECF No. 200, p. 11].

On the subject of potential sanctions, Judge Hunt finds that, although Defendants "may have spoliated evidence," there is no "direct evidence of the 'intent to deprive'" warranting sanctions [ECF No. 200, p. 12]. For example, Judge Hunts finds that (1) the Instagram account was deleted on the "arguably misunderstood advice of counsel" to "stop" operating the Instagram account [ECF No. 200, pp. 5-6]; (2) the Gmail account was lost because Google deactivated the account due to inactivity [ECF No. 200, p. 6]; and (3) Mr. Joseph's text messages were deleted (although some were later recovered) because his iPhone was set to auto-delete text messages after 30 days, triggering deletion of the messages even prior to the start of litigation [ECF No. 200, pp. 8–10, 13].

For these reasons, Judge Hunt determines that "Defendants' spoliation of evidence, while negligent, does not equal the intent to deprive or bad faith," rendering improper the sanction of default judgment against Defendants [ECF No. 200, pp. 13, 35]. Judge Hunt further recommends against an adverse inference jury instruction, advising instead to reserve any such instruction for trial should Defendants attempt improperly to use the absence of the ESI to their benefit [ECF No. 200, p. 14].

---

[2] Some of Mr. Joseph's text messages were recovered during discovery following a forensic search [ECF No. 200, p. 12].

Upon review, the Court finds that Judge Hunt's recommendation to deny Plaintiff's Motion to grant default judgment on Counts 3, 5, and 7 as a sanction—a finding as to which Plaintiff does not object—is well-reasoned and correct. The Eleventh Circuit has "long acknowledged the broad discretion of the district court to impose sanctions." *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). "This power derives from the court's inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases." *Id.* "Dismissal represents the most severe sanction available to a federal court, and therefore should only be exercised where there is a showing of bad faith and where lesser sanctions will not suffice." *Id.* (citing *Gratton v. Great American Communications*, 178 F.3d 1373, 1374 (11th Cir. 1999)).

The Court also agrees with Judge Hunt's recommendation not to issue an adverse inference jury instruction on Counts 1, 2, 4, and 6. The Eleventh Circuit has stated that "an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith," noting further that "'[m]ere negligence" in losing or destroying the records is not enough for an adverse inference, as 'it does not sustain an inference of consciousness of a weak case.'" *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997) (quoting *Vick v. Texas Employment Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975)). Judge Hunt finds in the Report that there is no direct evidence that Defendants acted in bad faith or with an intent to deprive Plaintiff from receiving any category of lost or deleted ESI [ECF No. 200, p. 13]. Plaintiff does not dispute this finding in its Objection [ECF No. 208, p. 6]. Instead, Plaintiff argues that Judge Hunt failed to analyze the full extent of the prejudice it suffered as a result of Defendants' spoliation, noting that Mr. Joseph's text messages could have shown additional evidence about the effect of Defendants' "bad faith scheme" [ECF No. 207, pp. 18–19]. Even assuming that is so, Judge Hunt properly recommended against an adverse instruction in the absence of bad faith on the part of

Defendants, a finding as to which Plaintiff does not object. *See Cox v. Target Corp.*, 351 F. App'x 381, 384 (11th Cir. 2009) (affirming district court's decision to deny a motion for an adverse jury instruction on spoilation of evidence when there was no evidence of bad faith). The Court therefore **ADOPTS** the Report's recommendation and **DENIES** Plaintiff's Motion for Default Judgment [ECF No. 136]. Defendants are cautioned, however, not to argue at trial or otherwise insinuate that any missing ESI inures to their benefit in any respect.

### B. Plaintiff's Motion for Summary Judgment on Counts 1, 2, 4, and 6

On June 11, 2021, Plaintiff moved for summary judgment on the following claims in the Second Amended Complaint:

- Count 1: Claim under the Anti-Cybersquatting Protection Act (15 U.S.C. § 1125(d));
- Count 2: Claim for Unfair Competition and False Advertising (15 U.S.C. § 1125(a));
- Count 4: Claim for Common Law Unfair Competition;
- Count 6: Claim for Florida's Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201, *et seq*.).

In the Report, Judge Hunt finds that, although Plaintiff is entitled to summary judgment on its claim for anti-cybersquatting in Count 1, it has not carried its burden to establish the required elements for Counts 2, 4, or 6 [ECF No, 200, pp. 18–32]. Specifically, Judge Hunt recommends that the Court grant summary judgment in favor of Plaintiff on Count 1, decline to disgorge Defendants' profits, and instead award $60,000 in statutory damages to Plaintiff plus reasonable attorneys' fees [ECF No. 200, pp. 14–28]. Judge Hunt also recommends denying Plaintiff's request for a permanent injunction as to all counts [ECF No. 200, pp. 33–34]. Plaintiff objects to Judge Hunt's damages recommendation on Count 1 and to the absence of a permanent injunction [ECF No. 208, pp. 10–16, 19–20; *see* ECF No. 200, pp. 26–28, 33–34]. Defendants object to

Judge Hunt's recommendation that an award of attorneys' fees be granted in Plaintiff's favor on Count 1 [ECF No. 206, pp. 2–3]. The Court addresses each objection below within the context of Counts 1, 2, 4, and 6.

1. **Count 1 - Federal anti-cybersquatting under 15 U.S.C. § 1125(d), Section 43 of the Lanham Act**

In the Report, Judge Hunt finds that Defendants willfully violated the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), by setting up six website domain names that were confusingly similar to Plaintiff's trademarked company name [ECF No. 200, p. 26]. Neither party objects to the finding of liability. Nor do Defendants dispute that their gross sales for the infringing period total $61,512.285.02 [ECF No. 137 ¶¶ 15–17].

The crux of the dispute turns on the question of damages to be awarded to Plaintiff on Count 1; Plaintiff seeks a portion of Defendants' profits during the infringing period and asserts that Defendants must provide credible evidence of any cost or deduction claimed; Defendants, on the other hand, believe that none of their gross sales is attributable to their infringing activity, warranting no lost profits at all.

Judge Hunt considered these arguments and found as follows. First, Judge Hunt found that Plaintiff's request to disgorge nearly $62 million in Defendants' gross sales figure is excessive, pointing to Plaintiff's acknowledgment of such during the motion hearing [ECF No. 200, p. 27 (referring to ECF No. 209, p. 43:11–23)]. Having concluded as much, Judge Hunt turned to Plaintiff's alternative request for statutory damages [ECF No. 159, p. 18 n.12], recommending an award of $10,000 per website domain violation "in keeping with similar awards in this District" for ACPA claims [ECF No. 200, p. 28].

Plaintiff objects to the Report, arguing that, although the "Court has discretion to reduce the amount of profits to be awarded, a reduction to $0.00 is 'clearly inadequate'"

[ECF No. 208, p. 10].  Plaintiff asserts that it met its burden under ACPA to be entitled to Defendants' profits and argues that Defendants have offered no credible evidence to show that none of its sales during the infringing period was attributable to their wrongful acts [ECF No. 208, pp. 13–14].  Accordingly, Plaintiff requests that the Court proceed to trial "if any factual issue remains as to the amount of profits to which Marksman is entitled," during which Defendants may present additional evidence of any reasonable deductions from their gross sales [ECF No. 208, p. 16].  Plaintiff also objects to Judge Hunt's recommendation to award Plaintiff statutory damages, arguing that a jury must determine the amount of statutory damages [ECF No. 208, pp. 7–10].

Upon full review, the Court concludes that Plaintiff is entitled under 15 U.S.C. § 1117(a) to seek Defendants' profits as recovery for Defendants' ACPA violations.  Further, the Court finds that sufficient factual questions remain on that point warranting an evidentiary hearing from which the Court may render a just award according to the circumstances of the case, including any cost or deduction claimed by Defendant.  15 U.S.C. § 1117(a).

> The statutory framework for assessing damages under ACPA provides as follows:
>
> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff *shall be entitled*, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.  The court shall assess such profits and damages or cause the same to be assessed under its direction.
>
> In assessing profits *the plaintiff shall be required to prove defendant's sales only*; defendant must prove all elements of cost or deduction claimed.  In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount.  If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for

> such sum as the court shall find to be just, according to the circumstances of the case.
>
> Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117(a) (emphases added).

Section 1117(a) vests considerable discretion in the district court to award the defendant's profits, guided by principles of equity. *See Burger King Corp. v. Mason*, 710 F.2d 1480, 1495 (11th Cir. 1983). To determine the proper amount of damages, the text of Section 1117(a) makes clear that "a plaintiff need not demonstrate actual damage to obtain an award reflecting an infringer's profits under § 35 of the Lanham Act." *Burger King Corp. v. Mason*, 855 F.2d 779, 781 (11th Cir. 1988). Instead, "the plaintiff need only prove gross sales[,] and then it is up to the infringer to prove which, if any, of those sales were not attributable to the wrongful act, and deductible costs and expenses to arrive at net profits." J. Thomas McCarthy, *Trademarks and Unfair Competition* § 30:66 (4th ed. 1998). "The burden is the infringer's to prove that his infringement had no cash value in sales made by him. If he does not do so, the profits made on sales of goods bearing the infringing mark properly belong to the owner of the mark." *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206–07 (1942).

Here, Plaintiff has met its burden under ACPA to prove Defendants' gross sales. It is undisputed that Defendants' gross sales during the infringing period of March 2018 to December 2020 was $61,512,285.02 [ECF No. 137 ¶¶ 15–17]. Defendants, on the other hand, argue that zero dollars of their gross sales were due to their infringing activity. In support, Defendants filed an affidavit from Rony Joseph, the VP for Defendants, who avers that he personally asks each new client how they heard of P.G. Security, but no client ever has informed him "that they decided to

9

consider P.G. Security as a potential vendor, or hire P.G. Security, based on any information obtained on the internet or any social media activity" [ECF No. 169-2 ¶¶ 6–7].

This affidavit, filed by the same individual responsible for setting up the infringing website domains and Gmail and Instagram accounts, is conclusory and self-serving. It also leaves the Court with a factual dispute regarding the true amount of reasonable deductions that should be applied to Defendants' gross sales. Accordingly, the Court **REJECTS** the portion of the Report that recommends that Plaintiff is not entitled to an award of Defendants' gross sales. The Court instead will require further evidence during an evidentiary hearing during which Defendants can offer additional support to justify their proposed deductions. *See* 15 U.S.C. 1117(a) ("The court shall assess such profits and damages or cause the same to be assessed under its direction."). In reaching this conclusion, the Court does not address Plaintiff's alternative request for statutory damages or the appropriate amount of same. In light of Plaintiff's request for a jury trial on all issues [ECF No. 49, p. 21], the amount of statutory damages is to be determined by a jury, not this Court, *see Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 353 (1998); Eleventh Circuit Civil Pattern Jury Instructions, § 10.7 (2020), and any remaining question as to Plaintiff's election of remedies will become relevant, if at all, following an evidentiary hearing to determine a just award, *see generally Kiva Kitchen & Bath Inc. v. Cap. Distrib. Inc.*, 319 F. App'x 316, 320 (5th Cir. 2009).

### 2. Counts 2, 4, and 6 – Unfair Competition and FDUPTA Claims

Plaintiff's claims in Counts 2, 4, and 6 are based on its allegations that Defendants paid for fake positive reviews on Defendants' Google page [ECF No. 159, p. 5]. Plaintiff asserts that these reviews constitute false commercial advertising or promotion and may be analyzed simultaneously under the legal framework of the Lanham Act [ECF No. 159, pp. 19–20].

Judge Hunt finds that Defendants paid for false and misleading misrepresentations of Defendants' services but finds that, "the element of materiality and the element that Plaintiff has been injured has not been met" [ECF No. 200, p. 31]. Judge Hunt finds that any claims made in the fake reviews that Defendants were the "best" or had a "great company" are mere puffery regarding Defendants' qualities, and that these types of reviews are non-actionable [ECF No. 200, p. 31]. Further, Judge Hunt finds that Plaintiff's claims of harm are speculative and notes that Plaintiff has not tied "the Google reviews to any loss of sales Plaintiff may have suffered" [ECF No. 200, p. 32]. Consequently, Judge Hunt recommends in the Report that the Court deny Plaintiff's Motion for Summary Judgment as to Counts, 2, 4, and 6 [ECF No. 200, p. 35]. Neither party objects to this portion of the Report. Nevertheless, upon *de novo* review of these counts, the Court agrees with Judge Hunt that Plaintiff is not entitled to summary judgment on these claims.[3] The Court thus **ACCEPTS** the Report and **DENIES** Plaintiff's Motion for Summary Judgment as to Counts 2, 4, and 6.

### 3. Plaintiff's Request for a Permanent Injunction

Plaintiff asks the Court to enter a permanent injunction "prohibiting Platinum and all persons acting in concert or participation with it from all present or future use of Marksman's Marks and any names confusingly similar to Marksman's Marks" [ECF No. 159, p. 19]. In the Report, Judge Hunt finds no evidence "that Defendants have used Plaintiff's marks after the lawsuit commenced or any other actions indicating that they would return to such activity" and

---

[3] Defendants have not moved for summary judgment on Counts 2, 4, or 6, and neither party disputes Judge Hunt's conclusion that these counts fail for lack of evidence. It is highly questionable, therefore, whether any of these counts warrants a trial. Therefore, as indicated in the Conclusion below, the Court hereby gives notice pursuant to Rule 56(f) that summary judgment may be granted in favor of Defendants on these claims following a reasonable time to respond. Fed. R. Civ. P. 56(f) (governing judgment independent of a motion for summary judgment).

recommends that the Court deny Plaintiff's request for injunctive relief [ECF No. 200, p. 34]. Plaintiff objects to this portion of the Report, arguing that, although Defendants ceased using Plaintiff's trademark, "it is not absolutely clear Platinum's conduct will not begin again in the future" [ECF No. 208, p. 19]. Plaintiff thus requests that the Court conduct a *de novo* review of the evidence and determine at summary judgment or at trial whether an injunction should be entered against Defendants [ECF No. 208, p. 20].

The Lanham Act grants federal courts the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a). "[A] plaintiff seeking a permanent injunction must demonstrate (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008). Crucial to this analysis is evidence of an irreparable injury, which Judge Hunt properly finds has not been established by Plaintiff in light of the absence of evidence that Defendants have continued to infringe on Plaintiff's trademark [ECF No. 200, p. 31]. Accordingly, at this stage of the proceeding, the Court **ACCEPTS** the Report's recommendation that a permanent injunction is not warranted, but Plaintiff's request on this point is **DENIED WITHOUT PREJUDICE** to be revisited, if appropriate, in the event of a material change in circumstances during the pendency of this litigation.

4. **Attorneys' Fees and Costs**

Plaintiff requests in its Motion for Summary Judgment that it be awarded attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a) [ECF No. 159, p. 22]. Judge Hunt finds that this case

qualifies as "exceptional" under the Lanham Act, because "Defendants deliberately engaged in actions using Plaintiff's marks for their own marks" [ECF No. 200, p. 34]. Judge Hunt recommends that, should the Court agree with his analysis regarding Plaintiff's ACPA claims and enter judgment in favor of Plaintiff, the Court should award Plaintiff reasonable attorneys' fees [ECF No. 200, p. 35]. Defendants object to the award of attorneys' fees and asks this Court to "reserve on the issue of entitlement to attorneys' fees until the final determination of all claims is achieved" [ECF No. 206, p. 4].

The Court agrees with the Report that this case qualifies as "exceptional" under the Lanham Act. *See* 15 U.S.C. § 1117(a) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party."). Therefore, the Court **ACCEPTS** the Report's recommendation that Plaintiff is entitled to reasonable attorneys' fees on Count 1 of the Second Amended Complaint. To promote efficiency, however, the Court reserves ruling on the appropriate amount of attorneys' fees to which Plaintiff is entitled on Count 1 (and any additional claims) until after final judgment is entered in this case. Accordingly, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. The Report [ECF No. 200] is **ADOPTED IN PART**.
2. Plaintiff's Motion for Default Judgment [ECF No. 136] is **DENIED**.
3. Plaintiff's Motion for Summary Judgment [ECF No. 159] is **GRANTED IN PART AND DENIED IN PART**.
4. Summary Judgment is **GRANTED** in favor of Plaintiff as to Count 1 of the Second Amended Complaint as to Defendants' liability under the ACPA. The final determination of damages is reserved for the Court following trial and any other proceedings as permitted by law.

5. Plaintiff's Motion for Summary Judgment is **DENIED** as to Counts 2, 4, and 6 of the Second Amended Complaint.

6. **However, pursuant to Rule 56(f), on or before December 22, 2021, Plaintiff shall file a memorandum of law justifying why this Court should not grant summary judgment in favor of Defendants on Counts 2, 4 and 6. As noted above, Plaintiff does not object to Judge Hunt's conclusion that Plaintiff has failed to establish two essential elements of these claims [ECF No. 200, pp. 31–32]. This raises the question whether this Court should grant judgment in favor of Defendants on those counts independent of Plaintiff's motion. Fed. R. Civ. P. 56(f). If the Court requires a response from Defendants to Plaintiff's filing, it shall so order.**

7. Plaintiff's request for a permanent injunction is **DENIED WITHOUT PREJUDICE**.

8. Plaintiff's request for attorneys' fees is **GRANTED** as to Count 1 of the Second Amended Complaint, but the amount of such fees is to be determined following entry of final judgment.

9. **The deadline to submit pre-trial materials as ordered by the Court in its Order Resetting Trial and Clarifying Certain Pre-Trial Deadlines [ECF No. 204] is hereby stayed pending resolution of the outcome of Counts 2, 4, and 6.**

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida this 7th day of December 2021.

AILEEN M. CANNON
UNITED STATES DISTRICT JUDGE

cc: counsel of record